CORRECTED

# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-1160V

Filed: December 15, 2025
Reissued for Public Availability: January 12, 2026

```
* * * * * * * * * * * * * *
BEVERLY FORD,                      *
                                   *
            Petitioner,            *
v.                                 *        Special Master Roth
                                   *
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
            Respondent.            *
* * * * * * * * * * * * * *
```

Beverly Ford, *pro se.*
Lara Englund, Esq., U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION[1]

**Roth**, Special Master:

On August 9, 2018, Beverly Ford ("petitioner") filed a petition under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 *et seq.*[2] ("Vaccine Act" or "the Program"). Petitioner alleged that she suffered muscle and/or nerve injury to her left arm as a result of a pneumococcal ("Prevnar 13") vaccination she received on September 24, 2015.[3] Petition at 1, ECF No. 1.

Having considered the entire record, including arguments made by the parties in their respective submissions, I find that petitioner has failed to provide preponderant evidence that the Prevnar 13 vaccine was the cause of her muscle and nerve injuries. Additionally, petitioner has failed to submit preponderant evidence of a vaccine related injury as required by the Act.

## I.    Procedural History

---

[1] Pursuant to Vaccine Rule 18(b), this decision was initially filed on December 15, 2025, and the parties were afforded 14 days to propose redactions. The parties did not propose any redactions. Accordingly, this decision is reissued in its original form for posting on the court's website.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Though the petition alleged the vaccination was in September of 2016, petitioner's medical records revealed that the subject vaccination was administered on September 24, 2015.

Petitioner filed a timely petition on August 9, 2018 as a *pro se* petitioner. ECF No. 1. The case was assigned to the undersigned on August 13, 2018. ECF No. 7.

An initial status conference was held on October 3, 2018. In response to petitioner's claims made during the conference, it was explained that the Vaccine Program handles only claims related to specific vaccines and their administration, and does not handle cases involving potential medical malpractice or criminal acts. Petitioner was encouraged to seek counsel to represent her and ordered to obtain and file complete copies of her medical records. ECF No. 15.

Petitioner filed several pages of medical records on October 22, 2018; October 29, 2018; December 26, 2018; and on January 3, 2019. ECF Nos. 16-17, 21, 23. Another status conference was held on March 7, 2019, during which a two-year gap in the records filed was discussed. Petitioner was ordered again to file her complete medical records.[4] ECF No. 29.

Despite her attempts to secure complete medical records, petitioner was unable to do so. Respondent was then ordered to subpoena petitioner's complete medical records so that all of her medical records and her complete medical history could be reviewed and considered. ECF Nos. 44, 51. Petitioner's medical records were subsequently filed by respondent as Respondent's Exhibits ("Resp. Ex.") A through F. ECF Nos. 64, 93.

On February 28, 2023, a status conference was held. Petitioner confirmed that the medical records respondent obtained and filed were complete. Following a discussion about the content of petitioner's medical records, respondent was ordered to file a Motion to Dismiss in an effort to give petitioner the opportunity to respond to the issues respondent raised and to provide any additional information she wanted the Court to consider. ECF No. 96.

Respondent filed a Motion for Ruling on the Record on April 27, 2023. Motion, ECF No. 97. Petitioner filed two letters in response, one on June 16, 2023, and the second on July 24, 2023. ECF Nos. 99-100.

Petitioner was given ample opportunity to file submissions and evidence during the course of this proceeding. When petitioner was unable to secure full and complete copies of her records, respondent was ordered to subpoena the medical records, which is atypical in the Program, to ensure that all petitioner's medical records were filed into the record and could be considered. A complete review of all of the evidence was performed before deciding this matter. *See Moriarty ex rel. Moriarty v. Sec'y of Health & Human Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though [s]he does not explicitly reference such evidence in h[er] decision.").

This matter is now ripe for ruling.

---

[4] Due to repeated communications with chambers, an order issued on October 30, 2018, advising petitioner that all further communications should be filed with the Court by sending written communication to the Clerk of Court. ECF No. 18. At the March 2019 status conference, petitioner was instructed again that any and all communication with the Court should be in writing and mailed to the Clerk of Court rather than having direct communications with Chambers or my law clerk. Nevertheless, petitioner continued to email Chambers. *See* ECF Nos. 36, 38, 43.

## II.    Factual Record

### A.  Medical Records Prior to the Prevnar 13 Vaccination[5]

Between the years 2000 and 2013,[6] petitioner presented for chronic pain in her head, neck, bilateral shoulders, and back, as well as diffuse body pain and neuropathy. *See generally* Resp. Ex. D; Resp. Ex. E; Resp. Ex. F. She reported pain in her joints, head, shoulders, and neck. Resp. Ex. E at 60; all her muscles and bones hurt. *Id*. at 55; neck pain down her arms and wearing a neck brace. Resp. Ex. F at 29; upper neck and shoulder cramping. Resp. Ex. E at 11; chronic pain syndrome and osteoarthritis. Resp. Ex. F at 32.

Between 2013 and September of 2015, petitioner presented for neck and bilateral shoulder pain. Resp. Ex D at 34; chronic pain in both shoulders. Resp. Ex. E at 1753-85; chronic pain from fibromyalgia. Resp. Ex. E at 1687-88; Resp. Ex. F at 4191; numbness of her hands and ulnar neuropathy. Resp. Ex. D at 34. MRIs of the cervical, thoracic, and lumbar spine showed degenerative changes. *Id*. at 37, 54.

On September 24, 2015, petitioner presented for resolving cough, imaging, and blood work. She received the subject Prevnar 13 vaccine in her left arm. ECF No. 16 at 7. Her chest x-ray was clear, but chronic obstructive lung disease was noted. *Id*. at 9; *see also* Resp. Ex. F at 3336.

### B.  Medical Records Following the Prevnar 13 Vaccination

Petitioner presented four days after vaccination for a routine visit. Resp. Ex. F at 3890-91. She reported pain in her temples, entire spine from the base of her skull down, and left arm numbness and tingling up to her left elbow and left side of her chest since receiving the Prevnar 13 vaccine on September 24, 2015. These "episodes" lasted about a minute. She denied local swelling or redness. *Id*. There was no warmth, erythema, tenderness to touch, or difficulty moving her left arm on examination. She had normal strength, reflexes, and grip. *Id*. at 3895. The assessment included symptoms due to degenerative changes seen on recent imaging of the cervical spine. *Id*. at 3897. She refused medication. *Id*.

Petitioner returned to the doctor on October 6, 2015 reporting left arm pain from her shoulder radiating down her arm to her elbow since receiving the Prevnar vaccine. She had been unable to sleep for the last 24 hours due to pain. She denied numbness or tingling distally. Her medical history of fibromyalgia, osteoarthritis, and chronic pain was noted. Resp. Ex. F at 3847. On examination, there was no swelling, erythema, or tenderness of the left deltoid. *Id*. at 3848. She reported being unable to move her arm but refused shoulder examination. She was however able to reach overhead and rotate her shoulder during conversation while stretching. Circulation,

---

[5] Petitioner has a significant medical history with multiple chronic conditions. The records filed reflect well over one hundred visits for various complaints. Only the visits and complaints related to her alleged vaccine injury are included herein.

[6] Petitioner was noted to have severe somatization and a psychiatric disorder but was not receptive to psychiatric intervention. This was a recurring issue in her filings with the Court, which will not be detailed due to the public nature of vaccine decisions. Resp. Ex. F at 19-22.

movement, and sensation were intact. *Id*. The assessment was pain related to cervical stenosis as seen on recent imaging, though she "insists pain has to come from the shot." She was given a Toradol injection and a prescription for Voltaren gel. *Id*. at 3849.

Petitioner called the doctor on October 8, 2015 to report that Voltaren gel did not work, her arm still hurt, and she was having muscle spasms with an inability to lift her neck or arm. Resp. Ex. F at 3842. She believed the needle from the vaccine was left in her arm. An x-ray of her left humerus was performed and was normal. *Id*. at 3834.

Petitioner presented to the ER on October 10, 2015 reporting progressively worsening left arm pain since a Prevnar 13 vaccine with muscle spasms of the left arm. Resp. Ex. E at 1468. Aleve and Lidocaine patches did not help. She continued to believe the needle was left in her arm. She had been seen for these complaints and received a pain injection without relief. *Id*. Bruising in five areas of the left upper arm was noted to be likely "unrelated to the injection site", and she had full active and passive range of motion on examination. *Id*. at 1470-71.

An MRI of the humerus of the left arm was performed in November of 2015 and was normal. Resp. Ex. F at 3825. She continued to report left arm pain, that the needle was left in her arm, chest pain, biceps pain, and that her muscles felt like they were moving on their own and her nerves were deteriorating. She was referred to neurology. *Id*. at 3825-26. EMG/NCS testing was performed. No issues were found associated with her left arm. There was ulnar neuropathy on the right across the elbow possibly from C5 radiculopathy. *Id*. at 3820.

Petitioner presented to rheumatology on December 4, 2015 and reported headaches and visual problems since June, left arm pain and neck pain, with tingling and muscle spasms in both arms since a vaccination in September. Resp. Ex. F at 3798-99. She had reduced range of motion with pain in her neck on examination, osteoarthritis in both hands, and reduced range of motion of both shoulders with tenderness on palpation in the right shoulder (the vaccine was given in her left). *Id*. at 3802-03. The assessment included osteoarthritis of multiple joints and left arm pain after pneumococcal vaccination. *Id*. at 3805-06.

Petitioner spoke to a nurse on December 7, 2015 about her left arm pain. Petitioner described left mid arm pain that radiated to her left mid forearm. Resp. Ex. F at 3780. There was no tenderness, normal strength, and normal reflexes on examination. *Id*. at 3783. Petitioner requested a referral to an orthopedic and vascular surgeon due to tingling in her legs and arms for weeks. *Id*. at 3751, 3785.

At a follow up appointment on January 11, 2016 for diabetes, petitioner was noted to move all four extremities on examination. Resp. Ex. F at 3712, 3714.

Petitioner telephoned her provider on January 15, 2016 complaining of bilateral arm pain and that her doctors were not addressing her complaints. Resp. Ex. F at 3708. An evaluation on January 26, 2016 documented that she had been evaluated several times, had x-rays, an MRI, and nerve conduction studies for her complaints of arm pain. An ultrasound was scheduled. *Id*. at 3695. Her left arm was noted to be tender on palpation but visibly normal with normal strength and range of motion. *Id*. at 3697. She was noted to use her arm during conversation. *Id*.

Petitioner presented to the Bone and Joint Institute on February 22, 2016. Right ulnar nerve decompression was noted to have been performed in March of 2015. She reported right elbow pain and left arm and hand pain. Resp. Ex. D at 1156, 1159-60, 1168. A steroid injection was administered. *Id*. at 1076.

Petitioner was seen by a neurologist on March 2, 2016 for arm pain since a vaccination. She also complained of intermittent neck pain, occasional headaches, chronic lower back pain, and bilateral hip pain. ECF No. 39 at 6. The record noted that there was no change from her last visit which appeared to have occurred on December 2, 2015 but no record was filed for a December 2, 2015 visit. Examination that day was normal. *Id*. at 9-10.

At a vascular specialist visit on April 6, 2016, petitioner reported sharp left arm pain, as well as numbness in her fingers, arms, and legs. A venous ultrasound of the left arm was conducted and was normal. ECF No. 39 at 1-4.

Petitioner attended physical therapy for her neck in August of 2016 and reported pain throughout her shoulders, spine, head, and neck. Resp. Ex. D at 975-1016.

On December 22, 2016 petitioner presented for an annual wellness examination. She complained of bursitis, pain in her bilateral hips, calf tightness, knees giving out without warning, and tightness in her upper neck and shoulders. Resp. Ex. C at 218.

At a January 19, 2017 visit for diabetes follow up among other issues, petitioner reported pain in her neck and shoulder that had been ongoing for years. Resp. Ex. C at 91. The assessment included cervicalgia and chronic pain. *Id*. at 93.

She attended physical therapy from January 16, 2017 through March 8, 2017 for left hip and sacroiliac pain. Resp. Ex. C at 24, 27.

On February 23, 2017 petitioner presented for "evaluation and treatment of a 17 years history of Neck pain with bilateral arm pain". She reported a gradual onset of pain that traveled to her shoulders with no recollection of injury. Resp. Ex. C at 19; *see also* Resp. Ex. A. The pain could be severe, was aggravated by nothing, and occasionally woke her from sleep. Resp. Ex. C at 19, 22.

At a March 1, 2017 visit, petitioner reported that she had been given "bad" injections among other issues. The doctor advised there was nothing "to offer her in [the] practice" and "firmly believe[d]" psychiatric treatment was necessary. Resp. Ex. C at 222.

Further imaging was performed in early 2017. X-rays of the lumbar spine were normal. MRI of the cervical spine revealed some mild stenosis at C4-5 and C5-6 without cord impingement. There was slight reversal of the normal lordotic curve. MRI of the lumbar spine revealed some foraminal narrowing at L4-5. Resp. Ex. C at 141-42, 232-33, 238-40, 242-43. At an examination on March 10, 2017, petitioner complained of neck and back pain with bilateral shoulder pain which she attributed to her lymphoma. *Id*. at 141. Examination was normal,

including examination of the left upper extremity with normal joint stability and range of motion. *Id*. at 143. She had full strength. *Id*.

She presented to First Med on May 22, 2017 reporting generalized body and muscle aches for two weeks, including her arms, shoulders, and feet. She described her arms feeling warm and sore. Resp. Ex. C at 166.

Petitioner presented on June 29, 2017 reporting problems that started in 2014 when she received a pneumonia vaccine (the vaccine was in 2015) and had an adverse reaction with jerkiness of her left arm. She then had a flu vaccine and had pain in her arms. Today she had sternal pain. Resp. Ex. C at 182.

Petitioner presented to a new primary care physician on January 24, 2018. Her prior medical conditions were fully documented. She complained of abdominal pain and severe knee pain, as well as muscle pain and twitching from a Prevnar vaccine. There was no mention of left arm or shoulder pain. Resp. Ex. A at 89-91.

On March 29, 2018, petitioner reported lateral lower and upper deltoid arm pain since a pneumonia injection two years ago that took 6 months before she could move her arm again. "The pain is excruciating, debilitating, but no rash. No muslce (sic) athrhy (sic) and no decreased in strght (sic)." Resp. Ex. C at 148. She reported continuing to feel the same pain in other muscles and arm shaking. She believed the nurse injected her lower in the deltoid. *Id*. X-rays of the left humerus performed that day revealed no acute osseous abnormality, only left shoulder joint degeneration. *Id*. at 244. A left upper extremity venous ultrasound showed no thrombosis. *Id*. at 245.

Petitioner presented on April 25, 2018 reporting left arm pain every day of varying severity associated with weakness from an injection. Resp. Ex. C at 156. X-rays and ultrasound of the arm were normal, and ANA was negative. *Id*. The doctor wrote that there was no explanation for petitioner's left arm pain. Resp. Ex. A at 29. She returned on May 31, 2018 reporting that the pain extended to her right arm and both calves making walking difficult. *Id*. at 19. Examination was normal. *Id*. at 23.

On May 31, 2018, petitioner presented for muscle pain in her arms and legs since an injection in her left arm years ago. The pain is sharp and now includes her right forearm to bicep with associated weakness. Resp. Ex. C at 169. The record included deep pain following a pneumonia vaccine in her left arm treated in multiple ways, but the pain is still there. *Id*.

On June 11, 2018, petitioner blamed her polyarthralgia on being injected with a device or other nonmedicinal substance in the past. Resp. Ex. C at 174. She reported pain in her knees, shoulder, hands, feet, and lower leg. *Id*.

Petitioner presented on June 28, 2018 for shoulder pain. It was noted that all testing had been normal. The assessment was presumed neuropathy vs. psychogenic disease. Resp. Ex. C at 177.

Petitioner presented on November 5, 2018, with a complaint of arm pain and tingling from her outer upper arm radiating to her forearm that started over a year ago after a pneumonia vaccine. ECF No. 23 at 5-7. Physical examination was within normal limits. *Id*. at 7. A CT of the cervical spine was compared to one from September 24, 2015, and showed no acute findings but moderate to severe cervical spine degenerative changes. *Id*. at 21. The physician documented that her left shoulder/arm pain was of unclear etiology. Extensive evaluation of similar complaints two years ago was unrevealing. Her pain and tenderness were out of proportion with physical findings. She also reported exertional calf pain. There was a possibility of depression with somatization. She had presented multiple times to the emergency room for pain in various areas of her body, including headache, neck pain, stomach pain, and upper and lower extremity pain. All labs and imaging were unrevealing. Her history became harder to understand and more diffuse the longer she spoke. *Id*.

Petitioner presented on November 12, 2018 for management of type 2 diabetes and diffuse body pain all over and in her joints which she thought was from her fibromyalgia. ECF No. 23 at 8-9. Musculoskeletal examination was normal. *Id*. at 11.

She presented again on November 20, 2018 for left upper arm pain of three-year duration that started after a pneumococcal vaccine. She had been seen by neurology in March of 2016 and had extensive testing, which was unrevealing. She reported a "deep wound" which caused excruciating pain, with no external wound. ECF No. 23 at 15. She had diffuse tenderness to palpation of her left arm and shoulder, but no erythema, warmth, induration, edema, fluctuance, or masses. *Id*. at 19. The etiology of her pain was "unclear" and out of proportion with physical findings. The thought was somatization following multiple evaluations and unrevealing work ups. *Id*. at 21-22.

X-rays of the left shoulder were performed on November 26, 2018, and showed progressed osteoarthritis. ECF No. 21 at 10; ECF No. 23 at 44.

Petitioner presented on December 19, 2018 for left arm pain. She reported the same arm and shoulder pain from a wound "on the inside that no one can see" and requested a referral to wound care and copies of her x-rays. She refused referral to a mental health professional, reporting she had training in mental health. She reported excruciating left arm pain for three years since the pneumococcal vaccine that was throbbing and sharp. She had seen doctors without resolution. She took gabapentin intermittently, but her shoulder was getting worse and attacking her muscles and nerves daily. It hurt to raise her hand, and she had bilateral calf pain. ECF No. 23 at 22. Examination revealed diffuse tenderness but no erythema, increased warmth, induration, edema, or masses. She had full range of active motion of the left shoulder. *Id*. at 23.

Petitioner presented in June of 2019 for bumps on her skin and reported muscle pain in her thighs and upper arms since a pneumonia vaccine many years ago. Resp. Ex. F at 3018-19.

At a visit to an allergist/immunologist in September of 2019, petitioner reported arm twitching and blisters from a Prevnar vaccine in 2016. Resp. Ex. F at 2813. She had radiating pain that was constant and affected all her muscles. *Id*. at 2814. On examination she had tenderness to palpation of the upper left arm with limited mobility. *Id*. 2816. She underwent "[p]rick tests for

Prevnar 13 vaccine", which were negative. *Id*. Her pain was thought to be neuropathic, and Lyrica was prescribed. *Id*. at 2817. It was suggested that petitioner may have had shingles at the time of her Prevnar vaccine but that "her symptoms are not consistent with an IgE mediated allergic reaction to this vaccine". *Id*. at 2816-17.

Petitioner presented to family medicine on October 10, 2019 reporting diffuse myalgias following a Prevnar shot, worse in her left arm but also present in her thighs, calves, and upper back. ECF No. 71 at 11. She had mild tenderness on examination of the left deltoid, but the examination was otherwise normal. *Id*. at 15.

Following an ER visit on October 15 for severe diarrhea and vomiting, petitioner presented for follow up on October 22, 2019 reporting diffuse muscular pain which she attributed to the Prevnar vaccine with headache and neck muscle pain. ECF No. 71 at 4. She had diffuse tenderness of her extremities, back, and anterior chest. The impression was fibromyalgia and tension headache. *Id*. at 6.

She returned to family medicine on November 11, 2019 reporting neck pain rated as a 9/10 in severity, left flank pain, and leg pain. ECF No. 71 at 30. The impression was fibromyalgia with left flank pain and cervical muscle spasm. *Id*. at 32. She returned in December with one month of morning headaches. *Id*. at 38. She had multiple tender points for fibromyalgia in her shoulders, chest, upper arms, and thighs. *Id*. at 40.

Records from 2020 through 2022, include treatment for various health issues and ongoing complaints of pain in her neck, back, knees, hips, hands, and fingers. *See* Resp. Ex. D. She presented several times in 2022 for complaints of left arm pain, myofascial pain, and numbness in her arm. *Id*. at 208, 236, 241, 245, 269. Another MRI of the humerus was normal. *Id*. at 212. She continued to complain of pain in her arms and calves from a Prevnar vaccine, but her arm strength was normal, as was wrist flexion. *Id*. at 213; Resp. Ex. F at 405. Prednisone taper was ordered for possible polymyositis rheumatica ("PMR"). Resp. Ex. D at 213. In May of 2022, she presented with bilateral shoulder and arm pain, especially in the biceps and triceps regions. *Id*. at 172. Nerve conduction studies and EMGs of the upper limbs were consistent with right ulnar neuropathy at the cubital tunnel, likely chronic with no evidence of carpal tunnel syndrome. *Id*. at 170-71. She also continued to complain of bilateral knee pain for which she received injections. *Id*. at 172. At a neurology visit in 2022, the range of motion in the peripheral joints was noted to be preserved with shoulder movement slow but intact. Resp. Ex. F at 410. There was no inflammatory myopathy noted. *Id*. at 411.

## C. Petitioner's Submissions

Petitioner submitted several letters during the course of these proceedings. It was explained to her several times that the Vaccine Program could only address vaccine-related injuries and that her complaints about her medical care and treatment by various doctors, medical personnel, and medical institutions could not be addressed. Petitioner continued to raise these complaints. Thus, the following summaries of the letters filed include only the statements that reference her alleged vaccine injury.

### 1. ECF No. 49

In her first letter, petitioner described the "strains and pains" she had experienced since receiving the subject vaccine. She wrote that the medicine or needle "attacks the muscles", causing muscles aches, throbs, and stinging pains which are "constant in both arm biceps and [] calves". She claimed there was still a "dot" on her arm at the injection site. ECF No. 49.

**2.   ECF No. 53[7]**

Petitioner submitted that what she was experiencing from the "injection" was genuine and extremely uncomfortable. ECF No. 53 at 3. Following the vaccine, the "medicine" was "agonizing, painful, aching and throbbing in all of [her] limbs muscles." *Id*. She had "pains of agony, aches, throbbing, sharp pains and discomforts" that were real. *Id*. at 5.

Petitioner included a record from June 29, 2017 writing in the margin that "the inject point (illegible) still on my arm." ECF No. 53 at 12. The Prevnar 13 attacked her muscles "with throbs, aches, and stings." *Id*. Petitioner seemingly tried to correct a medical record which documented that it took six months for her to be able to move her arm, writing that it took six months for the "medicine" to move an "inch". *Id*. at 17. She later wrote that the "medicine took around 6 months…to move or spread to my wrist area and I felt all the agony of it." *Id*. at 21. She experienced muscle throbs, aches, and pains at the "injection spot". *Id*. It has caused ongoing "agony and sufferings." *Id*. In the margins of another record, petitioner questioned why the doctors "keep trying to tie in everything together? My left arm muscles + calves aches, throbs and/or pains daily (of course my right arm muscles) its like a deep thrombone wound with aches throbs + pains in my left arm. REAL ISSUE ongoing from the Prevnar #13 stick/vaccination medicine." *Id*. at 26 (emphasis in original).

**3.   ECF No. 54**

Petitioner submitted that she still feels the "strains and pains of the medicine or needle which attacks the muscles." She sometimes has "muscle aches, throbs or stinging pains which are constant in both arm biceps and my calves in my legs and other areas in a form of potential debilitation mode. It feels like a strain of some type in my left arm." The "dot" where the injection was given is still there. ECF No. 54.

**4.   ECF No. 63**

In her fourth submission, petitioner advised that she still experienced left arm muscle throbbing, aching, and sharp, excruciating pains from the Prevnar 13 vaccination, which attacks the muscles of her right arm. This has affected her calves as well with periodic throbbing and muscle aches. The injection site "is like a deep wound which is aggravating…raw and painful…". ECF No. 63 at 1. She wrote that her left arm muscles are tender and sore every day, and she often has trouble raising her left arm. *Id*. at 3. Her "head muscles" hurt sometimes, too. She questioned how it was possible "that the aches and throbs traveled to my other muscles". *Id*.

---

[7] Various medical records were included within this submission with handwritten comments on them.

Petitioner described contacting a nurse through her insurance, who recommended that she see an immunologist or allergist. She then wrote that she contacted the immunology department of the Baylor Scott and White Hospital and was told that they did not test for "Prevnar issues".[8] ECF No. 63 at 2.

Petitioner attached a handwritten note regarding her inability to find an attorney who would represent her in her vaccine case. ECF No. 63 at 4.

### III.    Parties' Arguments

#### A. Respondent's Motion for Ruling on the Record

Respondent filed for Ruling on the Record seeking dismissal of petitioner's claim. Motion at 1.

Respondent submitted that petitioner sought compensation for a muscle and/or nerve injury to her left arm as a result of a pneumococcal vaccination she received on September 24, 2015. Motion at 1; Petition at 1.

Respondent detailed petitioner's medical history. Motion at 2-14.  Respondent detailed the law for on-Table and off-Table injuries, submitting that petitioner failed to meet her burden under either. *Id*. at 14-18.

More specifically, respondent argued that it was unclear if petitioner meant to allege a shoulder injury related to vaccine administration ("SIRVA") which is a presumptive injury for pneumococcal conjugate vaccine when a person experiences shoulder pain, limited range of motion after administration of a vaccine intended for intramuscular injection in the upper arm, has no history of pain, inflammation or dysfunction of the affected shoulder prior to vaccination, pain occurs within 48 hours after vaccination, the pain and limited range of motion is limited to the arm in which the vaccine was given, and there is no other condition that would explain the symptoms. Motion at 15, citing 42 C.F.R. § 100.3(a)(XII)(A) and (c)(10).

Respondent argued that petitioner failed to satisfy the criteria for a SIRVA claim because she reported shoulder and arm pain numerous times over the years dating back to October of 2001 and as recently as July 2014 when she was diagnosed with chronic bilateral shoulder pain. Motion at 15-16.

Additionally, petitioner attended "*hundreds*" of medical visits between December 4, 2015 and December 15, 2021 with only three examinations documenting limited range of motion and the remainder confirming full range of motion inconsistent with a Table SIRVA. Motion at 16 (emphasis in original).

---

[8] The records show that she was seen by immunology and had skin prick testing for Prevnar 13, and the testing was negative. Resp. Ex. F at 2813, 2816-17.

Further, petitioner's pain was not limited to her left arm but included numbness and tingling in her arm and left chest wall, neck, legs, and both arms. Motion at 16.

Finally, petitioner had other conditions prior to her vaccination that could explain her symptoms including neck and back pain with degenerative changes on MRI, somatization or other psychogenic disease, and fibromyalgia. Motion at 16-17 (citations omitted).

Respondent further argued that petitioner failed to establish a causation in fact claim. Respondent detailed the *Althen* requirements for a causation in fact claim. Motion at 17-18. Respondent argued that first, however, the Vaccine Act requires preponderant evidence of a compensable, medially recognized injury. *Id*. at 18. Here, petitioner alleged a muscle or nerve injury. None of her physicians reached a diagnosis for her injury or attributed any condition to her vaccination, nor has she submitted an expert report in support of her claim. Therefore, she has not offered a persuasive medical theory linking her vaccination to any injury and has failed to satisfy prong I. *Id*.

Respondent added that having failed to identify an injury, it would be impossible to evaluate any evidence of a logical sequence of cause and effect showing the vaccination as the reason for any specific condition or establish a medically acceptable proximate temporal relationship between the vaccination and any injury. Therefore, petitioner cannot satisfy *Althen* prongs II and III, and ultimately petitioner cannot prove causation in fact. Motion at 18.

Respondent concluded that the Program only compensates those who can substantiate their claims "through a presumption of causation (i.e., proof of a Table case) or by proving a causal link between the alleged injury and a covered vaccine." Motion at 19. Petitioner has failed to demonstrate entitlement to compensation. Therefore, the petition must be dismissed. *Id*.

## B. Petitioner's responses to the Ruling on the Record

Petitioner submitted two letters in response to the Motion for Ruling on the Record. ECF No. 99; ECF No. 100.

In her first letter, petitioner submitted that she suffered from weakening of her muscles and nerve cells that was slow and painful and weakened her body.[9] ECF No. 99 at 1-6.

In her second letter, petitioner submitted that she still experiences "ongoing symptoms and the breaking down of [her] muscle cells." ECF No. 100 at 2.

## IV.    Legal Standard

The Vaccine Act provides two avenues for petitioners to receive compensation. First, a petitioner may demonstrate a "Table" injury—i.e., an injury listed on the Vaccine Injury Table that occurred within the provided time period. 42 U.S.C. § 300aa-11(c)(1)(C)(i). "In such a case, causation is presumed." *Capizzano v. Sec'y of Health & Human Servs*., 440 F.3d 1317, 1320 (Fed. Cir. 2006); *see* § 13(a)(1)(B). Second, where the alleged injury is not listed on the Vaccine Injury

---

[9] The remainder of her submission involved complaints on topics unrelated to her vaccine related injury.

Table, a petitioner may demonstrate an "off-Table" injury, which requires that the petitioner "prove by a preponderance of the evidence that the vaccine at issue caused the injury." *Capizzano*, 440 F.3d at 1320; *see* § 11(c)(1)(C)(ii); *see also Wright v. Sec'y of Health & Human Servs.*, 22 F.4th 999, 1006 (Fed. Cir. 2022) (defining the term "residual effects" in the Act, as "detrimental conditions within the patient, such as lingering or recurring signs and symptoms" of the alleged vaccine injury, which are compensable).

To prove causation, a petitioner must satisfy the three-pronged test established in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005). *Althen* requires that a petitioner show by preponderant evidence that a vaccination they received caused their injury "by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Id.* at 1278. Together, these prongs must show "that the vaccine was 'not only a but-for cause of the injury but also a substantial factor in bringing about the injury.'" *Stone v. Sec'y of Health & Human Servs.*, 676 F.3d 1373, 1379 (Fed. Cir. 2012) (quoting *Shyface*, 165 F.3d at 1352-53). Generally, "petitioners [must] proffer trustworthy testimony from experts who can find support for their theories in medical literature." *LaLonde*, 746 F.3d at 1341; *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1361 (Fed. Cir. 2000).

## A. Defined and Recognized Injury

As a threshold matter, a petitioner must establish that they actually suffered the injury alleged in the petition. *See Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1346 (Fed. Cir. 2010). The Vaccine Act defines a "vaccine-related injury" as an "illness, injury, condition or death." §§ 11(c). The Federal Circuit has made clear that "the burden [is] on the petitioner to make a showing of *at least one defined and recognized injury*" to be entitled to compensation. *Lombardi v. Sec'y of Health & Human Servs.*, 656 F.3d 1343, 1353 (Fed. Cir. 2011) (emphasis added). While the Act does not require a petitioner to allege a specific diagnosis, a defined and recognized injury must be more than "merely a symptom or manifestation of an unknown injury." *Id.*

## B. Fact Finding

The process for making determinations in Vaccine Program cases regarding factual issues begins with analyzing the medical records, which are required to be filed with the petition. § 11(c)(2). Medical records created contemporaneously with the events they describe are generally considered to be more trustworthy. *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *but see Kirby v. Sec'y of Health & Human Servs.*, 993 F.3d 1378, 1382-83 (Fed. Cir. 2021) (clarifying that *Cucuras* does not stand for proposition that medical records are presumptively accurate and complete). While not presumed to be complete and accurate, medical records made while seeking treatment are generally afforded more weight than statements made by petitioners after-the-fact. *See Gerami v. Sec'y of Health & Human Servs.*, No. 12-442V, 2013 WL 5998109, at *4 (Fed. Cl. Spec. Mstr. Oct. 11, 2013) (finding that contemporaneously documented medical evidence was more persuasive than the letter prepared for litigation purposes), *mot. for rev. denied*, 127 Fed. Cl. 299 (2014). Indeed, "where later testimony conflicts with earlier contemporaneous documents, courts generally give the contemporaneous

documentation more weight." *Campbell ex rel. Campbell v. Sec'y of Health & Human Servs*., 69 Fed. Cl. 775, 779 (2006); *see United States v. U.S. Gypsum Co*., 333 U.S. 364, 396 (1948).

In short, "the record as a whole" must be considered. § 13(a).

## V.    Analysis

### A. Defined Injury

It is petitioner's burden to prove a "vaccine-related injury", meaning a "defined and recognized injury" that is more than "merely a symptom or manifestation of an unknown injury." § 11(c); *Lombardi*, 656 F.3d at 1353. From what can be gathered from the petition filed in this case, petitioner has alleged a muscle and nerve injury. *See* Petition.

Respondent argued that petitioner failed to provide evidence of a compensable, medically recognized injury. Motion at 18. I agree.

In her letters to the Court, petitioner described symptoms of "strains and pains", muscle aches, throbs, stinging, genuine discomfort, and agony present in her left arm, calves, head, and other muscles. She argued the Prevnar 13 vaccine attacked her muscles and nerves, causing her symptoms. ECF No. 49; ECF No. 53 at 3, 5, 21, 26; ECF No. 54; ECF No. 63; ECF No. 99; ECF No. 100.

Petitioner has failed to allege a defined and recognized vaccine injury. Rather, included in her complaints attributed to the Prevnar vaccination was not only left arm pain, but also muscle and nerve pain throughout her body. However, when examined by various providers of various specialties, there were no findings of swelling, warmth, decreased muscle strength, or decreased hand grip; her arm looked completely normal, and she could move it without difficulty but complained of tenderness on palpation. Resp. Ex. C at 143; Resp. Ex. E at 1470-71; Resp. Ex. F at 3697, 3712, 3714, 3783, 3802-03, 3848, 3895. Objective testing was normal and failed to reveal a cause for her complaints involving her left arm. MRI of the left arm on November 11, 2015, revealed left glenohumeral osteoarthritis but was otherwise normal. Resp. Ex. F at 3825. EMG/NCS studies were normal but for right ulnar neuropathy across the elbow possibly from C5 radiculopathy. *Id*. at 3820. A venous ultrasound in April of 2016 was normal. ECF No. 39 at 1-4. MRI of the cervical spine in March of 2017 showed degenerative discs and moderate to severe stenosis. Resp. Ex. A at 160-61. X-ray of the left humerus in March of 2018 was normal but for shoulder joint degeneration. *Id*. at 145. A venous ultrasound of the left upper extremity in April of 2018 was normal. *Id*. at 144. Repeat x-ray of the left shoulder in November of 2018 showed progression of osteoarthritis. ECF No. 21 at 10; ECF No. 23 at 44. Repeat MRI of the left humerus was normal. Resp. Ex. D at 212. EMG in May of 2022 again showed right ulnar neuropathy but was otherwise normal. *Id*. at 170-71. Skin prick testing for Prevnar 13 in September of 2019 was negative. Resp. Ex. F at 2816. Despite extensive testing, there was no diagnosis of any injury related to her left arm or the subject vaccination, and her symptoms were instead often attributed to unrelated conditions, including degenerative changes seen on imaging, osteoarthritis, fibromyalgia, and somatization. *See, e.g.,* Resp. Ex. A at 29.

13

While a specific diagnosis is not required, a compensable injury must be more than "merely a symptom or manifestation of an unknown injury." *Lombardi*, 656 F.3d at 1353. Petitioner presented with various complaints which were taken seriously by her treating providers of multiple specialties, with extensive objective testing performed and repeated, none of which revealed any injury to the left arm or shoulder. Petitioner's complaints and allegations of symptoms and nonspecific muscle and nerve injuries are insufficient to satisfy her burden of identifying a defined and recognized injury.

### B.  Causation

Furthermore, even accepting her petition and filings as a SIRVA injury, petitioner still cannot meet her burden. Her medical records are replete with complaints of shoulder and arm pain for several years prior to receiving the subject vaccine. Following receipt of the Prevnar 13 vaccination, her examinations included normal range of motion, she complained of pain throughout her body, including both arms, her neck, head, and calves, and her other conditions were thought to be the cause of her symptoms including degenerative changes, osteoarthritis, somatization, and fibromyalgia. Accordingly, petitioner cannot satisfy the criteria of a SIRVA. 42 C.F.R. § 100.3(a).

Finally, petitioner has not met her burden for an off-Table claim. She failed to demonstrate a defined and recognized injury to which the *Althen* analysis could be applied. None of her treating physicians attributed petitioner's complaints to a vaccine-related mechanical injury or immune-mediated illness or opined that the Prevnar vaccine caused any of her symptoms, nor did petitioner file an expert report that implicated the vaccine as a cause of any condition. *LaLonde*, 746 F.3d at 1341; *Lampe*, 219 F.3d at 1361.

### VI.    Conclusion

Upon careful and thorough evaluation of the evidence filed in this matter, I find that petitioner has failed to show that she is entitled to compensation under the Vaccine Act. My decision in no way suggests that petitioner did not and does not suffer from genuine pain. Although petitioner has my sympathies, my decision must be based on an application of the law. Petitioner has failed to establish that the Prevnar 13 vaccination she received on September 24, 2015 was the cause of any muscle and/or nerve pain. Further, petitioner failed to establish that her complaints manifested as a recognized and definable injury, as required by the Vaccine Act. Therefore, petitioner is not entitled to compensation. **The Clerk shall enter judgment consistent with this Decision.**[10]

**IT IS SO ORDERED.**

**s/Mindy Michaels Roth**
Mindy Michaels Roth

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

Special Master